IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GULF CRANE SERVICES, INC. § | |
| AND C & D PRODUCTION § | |
| SPECIALIST CO. INC., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. H-17-1343 |
| § | |
| TOTAL SAFETY U.S., INC., § | |
| § | |
| Defendant. § | |

## **MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] are Plaintiffs C & D Production Specialist Co. Inc. ("CDPS") and Lexington Insurance Company's ("Lexington") Motion for Partial Summary Judgment (Doc. 109), Plaintiffs Gulf Crane Services Inc. ("Gulf Crane") and Lexington's Motion for Partial Summary Judgment (Doc. 110), and Total Safety U.S., Inc.'s ("Total Safety") Motion for Summary Judgment (Doc. 113). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Total Safety's Motion be **GRANTED** and CDPS, Gulf Crane, and Lexington's motions be **DENIED**.

### **I. Case Background**

Plaintiff Total Safety U.S. Inc. ("Total Safety") originally filed this lawsuit seeking a declaratory judgment that it is not

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 64, Ord. Dated May 11, 2018.

required to indemnify or defend Freeport-McMoRan Oil & Gas, LLC ("FMOG"), Freeport-McMoRan, Inc. ("FMI"), CDPS, or Gulf Crane in connection with a lawsuit filed in 2016.[2]

### A. Factual Background

This lawsuit concerns two master services contracts containing indemnity provisions and a lawsuit that allegedly triggers these provisions.

#### 1. The 2005 MSA

In 2005, Total Safety entered into a Master Services Agreement (the "2005 MSA") with McMoRan Oil & Gas LLC ("MOGL") and its affiliated and subsidiary entities (collectively defined as "MSA OWNER" in the contract).[3] The 2005 MSA provides that MSA OWNER may request services from Total Safety via purchase order or verbal call-out when circumstances do not permit or require a written order.[4]

The relevant indemnification provision of the 2005 MSA reads as follows:

> [Total Safety] shall protect, indemnify, defend and save harmless [MSA OWNER] . . . from and against all claims, demands or causes of action of every kind and character for bodily injury or death of, or for property damage or loss sustained by, [Total Safety or Total Safety's] employees, subcontractors or consultants arising directly

---

[2] See Doc. 1, Total Safety's Orig. Compl.

[3] See Doc. 113-1, Ex. A to Total Safety's Mot. for Summ. J., The 2005 MSA p. 1.

[4] See id.

or indirectly out of the Work under [the 2005 MSA].[5]

## 2. The FMI and PXP Merger

In December 2012, FMI and Plains Exploration & Production Company ("PXP") entered into an Agreement and Plan of Merger ("2012 Merger Agreement").[6] To accomplish the merger, FMI subsequently created FMOG as its wholly-owned subsidiary.[7] Under the 2012 Merger Agreement, PXP was to be merged into FMOG and FMOG would be the surviving company. The merger of PXP into FMOG became effective on May 31, 2013.[8]

## 3. The 2013 MSC

In April 2013, prior to the effective date of the PXP-FMOG merger, Total Safety and PXP entered into a Master Services Contract (the "2013 MSC").[9]

Section One of the 2013 MSC provides that PXP and all of its subsidiaries:

> may from time to time orally or in writing (a) retain the services of [Total Safety] in connection with the construction and/or operation of properties and facilities for exploration, development, production and

---

[5] See id. p. 5.

[6] See Doc. 109-4, Ex. 3 to CDPS & Lexington's Mot. for Partial Summ. J., Certificate of Merger Between PXP and FMOG.

[7] See Docs. 109-2 & 109-3, Exs. 2A & 2B to CDPS & Lexington's Mot. for Partial Summ. J., Certificate of Formation of IMONC LLC & Name Change of IMONC LLC to FMOG.

[8] See Doc. 109-4, Ex. 3 to CDPS & Lexington's Mot. for Partial Summ. J., Certificate of Merger Between PXP and FMOG.

[9] See Doc. 113-4, Ex. D to Total Safety's Mot. for Summ. J., The 2013 MSC.

marketing of oil, gas or other minerals, and/or (b) purchase or rent goods, supplies, equipment, materials, or facilities from [Total Safety] (hereinafter referred to as the "Work"). Any oral requests will be submitted in writing as soon as possible.[10]

Section Two, titled "Request for Goods and/or services by [PXP or its subsidiaries]" of the 2013 MSC provides that:

Upon [PXP or its subsidiaries] notifying [Total Safety] of the Work desired, and [Total Safety's] receipt and acceptance of the written offer to perform such Work, [Total Safety] will commence furnishing same at the agreed-upon time and place, and will continue such Work diligently and without delay, in a good and workmanlike manner to completion. This [2013 MSC] does not obligate [PXP or its subsidiaries] to order Work from [Total Safety] or to accept [Total Safety's] offers in response to a request for Work nor does it obligate [PXP or its subsidiaries] to accept such Work, but it shall control and govern all Work ordered by [PXP or its subsidiaries] and accepted by Contractor during the term hereof.[11]

Section Four of the 2013 MSC contains extensive indemnity provisions that are unnecessary to recite here.[12]

### 4. The *Maillet* Lawsuit

On April 19, 2016, Troy A. Maillet ("Maillet") filed a lawsuit against Gulf Crane, FMI, and FMOG in the Western District of Louisiana, Cause No. 6:16-cv-00513 (the "*Maillet* Lawsuit").[13] On October 25, 2016, Maillet amended his complaint to add CDPS to the

---

[10] See id. p. 1.

[11] See id.

[12] See id. pp. 3-5.

[13] See Doc. 109-10, Ex. 9 to CDPS & Lexington's Mot. for Partial Summ., *Maillet* Orig. Compl.

lawsuit.[14]

The Maillet Lawsuit arose out of an injury sustained by Maillet aboard the High Island 537, a fixed production platform located in the Gulf of Mexico, on June 12, 2015.[15] The High Island 537 was owned by FMI and/or FMOG, and operated by FMI, FMOG, and/or CDPS.[16] In the lawsuit, Maillet alleges that he was working as a safety technician in the course and scope of his employment for Total Safety when the incident occurred.[17] On June 12, 2015, at approximately 8:00 p.m., Maillet and several other crew members were being transported from the platform to a vessel via a crane-mounted personnel basket.[18] The crane "swung the personnel basket and crashed into the crane boom rest."[19] The crane was owned and operated by Gulf Crane.[20] FMI, FMOG, and/or CDPS gave the "directive to transport the crew to the vessel by personnel basket, as opposed to other means."[21]

Maillet alleged that he was injured as a direct and proximate

---

[14] See Doc. 109-11, Ex. 10 to CDPS & Lexington's Mot. for Partial Summ. J., *Maillet* Am. Compl.

[15] See id. p. 2.

[16] See id.

[17] See id.

[18] See id.

[19] See id.

[20] See id. p. 3.

[21] See id.

result of the negligence, gross negligence, and willful and wanton conduct of Gulf Crane, FMI, FMOG, and CDPS.[22]

### 5. Requests for Indemnity

On August 9, 2016, Gulf Crane requested that Total Safety defend and indemnify Gulf Crane for the Maillet Lawsuit pursuant to the 2005 MSA.[23] On October 13, 2016, Total Safety informed Gulf Crane that it did not believe that the 2005 MSA required it to defend and indemnify Gulf Crane for the Maillet Lawsuit.[24] On April 4, 2017, Gulf Crane requested that Total Safety defend and indemnify Gulf Crane for the Maillet Lawsuit pursuant to the 2013 MSC.[25] On May 4, 2017, Total Safety informed Gulf Crane that it did not believe the 2013 MSC applied and that Total Safety had filed this lawsuit seeking a declaratory judgment that it was not required to defend or indemnify Gulf Crane for the Maillet Lawsuit.[26]

On November 14, 2016, CDPS requested that Total Safety defend and indemnify CDPS for the Maillet Lawsuit pursuant to the 2005

---

[22] See id. pp. 3-5.

[23] See Doc. 113-2, Ex. 1 to Ex. B to Total Safety's Mot. for Summ. J., Gulf Crane's Request for Defense and Indemnification.

[24] See Doc. 113-2, Ex. 2 to Ex. B to Total Safety's Mot. for Summ. J., Total Safety's Resp. to Gulf Crane's Request for Defense and Indemnification.

[25] See Doc. 113-2, Ex. 3 to Ex. B to Total Safety's Mot. for Summ. J., Gulf Crane's 2nd Request for Defense and Indemnification.

[26] See Doc. 113-2, Ex. 4 to Ex. B to Total Safety's Mot. for Summ. J., Total Safety's Resp. to Gulf Crane's 2nd Request for Defense and Indemnification.

MSA.[27] On December 12, 2016, Total Safety informed CDPS that it did not believe the 2005 MSA required it to defend or indemnify CDPS for the Maillet Lawsuit.[28] On April 3, 2017, CDPS requested that Total Safety defend and indemnify CDPS for the Maillet Lawsuit pursuant to the 2013 MSC.[29] On May 4, 2017, Total Safety informed CDPS that it did not believe the 2013 MSC applied and that Total Safety had filed this lawsuit seeking a declaratory judgment that it was not required to defend or indemnify CDPS for the Maillet Lawsuit.[30]

## B. Procedural Background

Total Safety filed its original complaint against Defendants FMOG, FMI, Gulf Crane, and CDPS on May 1, 2017, seeking a declaratory judgment that it was not required to defend or indemnify them for the Maillet Lawsuit.[31] On June 30, 2017, CDPS filed its counterclaim against Total Safety.[32] On July 3, 2017, Gulf Crane filed its counterclaim against Total Safety.[33] On July

---

[27] See Doc. 113-2, Ex. 5 to Ex. B to Total Safety's Mot. for Summ. J., CDPS's Request for Defense and Indemnification.

[28] See Doc. 113-2, Ex. 6 to Ex. B to Total Safety's Mot. for Summ. J., Total Safety's Resp. to CDPS's Request for Defense and Indemnification.

[29] See Doc. 113-2, Ex. 7 to Ex. B to Total Safety's Mot. for Summ. J., CDPS's 2nd Request for Defense and Indemnification.

[30] See Doc. 113-2, Ex. 8 to Ex. B to Total Safety's Mot. for Summ. J., Total Safety's Resp. to CDPS's 2nd Request for Defense and Indemnification.

[31] See Doc. 1, Total Safety's Orig. Compl.

[32] See Doc. 12, C & D's Ans. & Countercl.

[33] See Doc. 14, Gulf Crane's Ans. & Countercl.

20, 2017, FMOG and FMI filed their counterclaim against Total Safety.[34]

On January 23, 2018, CDPS filed its third-party complaint against Starr Indemnity & Liability Company ("Starr"), Total Safety's insurer, following the district court's granting of an unopposed motion for joinder.[35] On January 24, 2018, FMOG and FMI filed a third-party complaint against Starr following the district court's granting of an unopposed motion for joinder.[36] On April 30, 2018, CDPS, FMOG, and FMI, filed amended third-party complaints against Starr.[37]

On December 19, 2018, following the parties' filing of a joint stipulation of dismissal, the court ordered that the parties' claims were dismissed except for CDPS and Gulf Crane's counterclaims against Total Safety and CDPS's claims against Starr.[38] On February 21, 2019, following a stipulation of dismissal, the court ordered that CDPS's claims against Starr were dismissed.[39]

On February 1, 2019, with the court's leave, Gulf Crane and

---

[34] See Doc. 17, FMOG & FMI's 1st Am. Ans. & Countercl.

[35] See Doc. 38, C & D's 3rd Party Compl.; Doc. 37, Ord. date Jan. 23, 2018.

[36] See Doc. 36, FMOG & FMI's 3rd Party Compl.; Doc. 35,. Ord. dated Jan. 23, 2018.

[37] See Docs. 56 & 57, CDPS, FMOG, and FMI's Am. 3rd Party Compls.

[38] See Doc. 101, Ord. Dated Dec. 19, 2018.

[39] See Doc. 120, Ord. Dated Feb. 21, 2019.

Lexington filed their amended and supplemental counterclaim against Total Safety.[40] On February 4, 2019, with the court's leave, CDPS and Lexington filed their amended and supplemental counterclaim against Total Safety.[41]

On February 11, 2019, CDPS and Lexington filed their pending motion for partial summary judgment.[42] On the same day, Gulf Crane and Lexington filed their pending motion for partial summary judgment.[43] On February 15, 2019, on Total Safety's motion, the court struck CDPS, Gulf Crane, and Lexington's amended and supplemental counterclaims because they exceeded the scope of the parties' agreement to amend.[44] The court gave CDPS, Gulf Crane, and Lexington leave to refile their amended and supplemental counterclaims adding Lexington as a party.[45]

On February 22, 2019, Gulf Crane and Lexington amended their counterclaim against Total Safety.[46] On February 25, 2019, CDPS and Lexington amended their counterclaim against Total Safety.[47] On March 4, 2019, Gulf Crane, CDPS, and Lexington filed their

---

[40] See Doc. 105, Gulf Crane & Lexington's Am. and Supp. Countercl.

[41] See Doc. 108, CDPS & Lexington's Am. and Supp. Countercl.

[42] See Doc. 109, CDPS & Lexington's Mot. for Partial Summ. J.

[43] See Doc. 110, Gulf Crane & Lexington's Mot. for Partial Summ. J.

[44] See Doc. 118, Ord. Dated Feb. 15, 2019.

[45] See id.

[46] See Doc. 121, Gulf Crane & Lexington's 2nd Am. Countercl.

[47] See Doc. 122, CDPS & Lexington's 2nd Am. Countercl.

responses to Total Safety's motion for summary judgment.[48] On the same day, Total Safety filed a joint response to CDPS, Gulf Crane, and Lexington's motions for partial summary judgment.[49] On March 19, 2019, Total Safety, Gulf Crane, CDPS, and Lexington filed replies to the pending motions for summary judgment.[50] On July 22, 2019, following the joint motion of the parties, the court realigned the parties.[51]

The parties assert that the court has jurisdiction over the instant disputes under the Outer Continental Shelf Lands Act ("OCSLA").[52]

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that

---

[48] See Doc. 123, Gulf Crane & Lexington's Resp. to Total Safety's Mot. for Summ. J.; Doc. 125, CDPS & Lexington's Resp. to Total Safety's Mot. for Summ. J.

[49] See Doc. 127, Total Safety's Resp. to CDPS, Gulf Crane, and Lexington's Mots. for Partial Summ. J.

[50] See Docs. 130, 131, & 132, Total Safety, Gulf Crane, CDPS, and Lexington's Replies to Mots. for Summ. J.

[51] See Doc. 136, Ord. Dated July 22, 2019.

[52] The law is unsettled as to whether a federal court has OCSLA subject matter jurisdiction over a primarily contractual indemnity dispute where the incident giving rise to the indemnity dispute occurred on a OCSLA situs and has been addressed in a separate lawsuit. See e.g., Enven Energy Ventures, LLC v. Gemini Ins. Co., 6:17-CV-01573, 2018 WL 3203605, at *3 (W.D. La. June 8, 2018). However, the law is clear that a contractual dispute arises on an OCSLA situs if a majority of the performance called for under the contract was "to be performed on stationary platforms or other OCSLA situses . . . ." Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 589 F.3d 778, 787 (5th Cir. 2009). The court held a hearing questioning its OCSLA subject matter jurisdiction on November 29, 2018. The parties agreed that the majority of the work called for under the two master services contracts allegedly applicable to the dispute was to be performed on an OCSLA situs. Accordingly, the court has OCSLA subject matter jurisdiction over the disputes related to those contracts.

no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 504 (5th Cir. 2014). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Coastal Agricultural Supply, Inc., 759 F.3d at 504 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. See id. at 505 (quoting Celotex Corp., 477 U.S. at 323). If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute. See id. The court must accept all of the nonmovant's evidence as true and draw all justifiable inferences in her favor. Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 505 (5th Cir. 2014)(quoting

Anderson, 477 U.S. at 255).

### III. Analysis

The parties have moved for summary judgment on the following issues: (1) whether FMOG acquired rights under the 2013 MSC following the PXP-FMOG merger; (2) whether the 2013 MSC or the 2005 MSA applied to the work being performed by Maillet when he was injured; and (3) whether the 2005 MSA satisfied the express negligence doctrine.

Total Safety argues it has no duty to defend or indemnify Plaintiffs because the 2005 MSA applied to the work that Maillet was performing when injured and the 2005 MSA's indemnity provision fails the express negligence doctrine. Alternatively, Total Safety argues that Plaintiffs did not acquire rights under the 2013 MSC, and the 2013 MSC fails the express negligence doctrine even if they did acquire such rights.

CDPS, Gulf Crane, and Lexington (collectively the "Plaintiffs") argue that they acquired rights under the 2013 MSC and that the 2013 MSC applied to the work that Maillet was performing when he was injured. Plaintiffs also argue that the 2013 MSC's indemnity provisions pass the express negligence doctrine and, thus, Total Safety was required to indemnify them for the Maillet Lawsuit.

**A.    Doctrine of Merger**

Plaintiffs argue that the 2005 MSA was superseded and replaced

12

by the 2013 MSC under the doctrine of merger. "Merger happens when the same parties to an earlier agreement later enter into a written integrated agreement covering the same subject matter." Fish v. Tandy Corp., 948 S.W.2d 886, 898 (Tex. App.—Fort Worth 1997, writ denied)(citing Pitman v. Lightfoot, 937 S.W.2d 496, 529 (Tex. App.—San Antonio 1996, no writ). Here, the 2005 MSA was entered into by MOGL and Total Safety, and the 2013 MSC was executed by PXP and Total Safety. The 2013 MSC could not have superseded and replaced the 2005 MSA under the doctrine of merger because it was not entered into by the same parties.

The court next considers which contract was applicable to the work Maillet performed when he was injured.

**B.    Applicable Master Services Contract**

A master services contract is not self-effectuating, but instead provides the general terms of an agreement between two parties should they invoke the master services contract according to its terms. See ODL Services, Inc. v. ConocoPhillips Co., 264 S.W.3d 399, 414 (Tex. App.—Houston [1st Dist.] 2008, no pet.)(discussing how a master agreement containing an arbitration clause was not a binding contract until there was a request for services); Matte v. Zapata Offshore Co., 784 F.2d 628, 630 (5th Cir. 1986)(A master services contract is "not a binding contract but merely sets out the rules of the game in the event the parties decide to play ball.")(internal quotation marks omitted).

Here, the 2005 MSA provided that work may be requested pursuant to its terms by either written work order or verbal call-out.[53] The 2013 MSC provided that work may be requested pursuant to its terms by a written work order or by a verbal request, followed by a written work order.[54]

Plaintiffs argue that a chain of email price negotiations between Total Safety and FMOG constitute a written work order sufficient to trigger the 2013 MSC.[55] However, the emails do not specify what work was requested, or where and when that work was to be completed.[56] Rather, these emails established the prices that would be charged for various types of future work, if ordered.[57] Accordingly, the court finds that the 2013 MSC could not have been triggered by the email price negotiations.

Total Safety has presented undisputed evidence that the work Maillet was performing when injured was requested via verbal call-out and that there was never a written work order that followed the

---

[53] See Doc. 113-1, Ex. A to Total Safety's Mot. for Summ. J., The 2005 MSA p. 1.

[54] See Doc. 113-4, Ex. D to Total Safety's Mot. for Summ. J., The 2013 MSC p. 1.

[55] See Doc. 124, Ex. 8 to Gulf Crane and Lexington's Resp. to Mot. for Summ. J., Price Negotiations; Doc. 126, Ex. 8 to CDPS & Lexington's Resp. to Mot. for Summ. J., Price Negotiations.

[56] See id.

[57] See id.

14

verbal call-out.[58]  The only evidence Plaintiffs have provided of a written work order is the email price negotiations, which do not constitute a written work order.  A verbal call-out is insufficient to trigger the 2013 MSC unless that call-out was memorialized in writing "as soon as possible."[59]  Accordingly, even if FMOG had rights under the 2013 MSC, an issue contested by Total Safety, it could not have triggered the 2013 MSC because there was never a written order confirming the work that Maillet was performing when he was injured.  Thus, because the 2005 MSA was the only agreement allowing a verbal call-out, it is the only master services contract that could have been triggered by the verbal call-out.

## C.  Waiver, Estoppel, and Mutual Mistake

Plaintiffs argue that Total Safety is barred from asserting that a written order was required to invoke the 2013 MSC under the doctrines of waiver, estoppel, and mutual mistake.  Plaintiffs assert that because Total Safety and the Freeport-McMoRan entities have always operated by using verbal requests, Total Safety cannot now assert that the 2013 MSC is inapplicable without a written request.[60]  However, the fact that the Freeport-McMoRan entities and Total Safety have always used verbal call-outs is further evidence

---

[58]  See Doc. 113-2, Ex. 9 to Ex. B to Total Safety's Mot. for Summ. J., Landry Dep. p. 152-153.

[59]  See Doc. 113-4, Ex. D to Total Safety's Mot. for Summ. J., The 2013 MSC p. 1.

[60]  See Docs. 123 & 125, Pls.' Resps. to Total Safety's Mot. for Summ. J. pp. 14-20.

that they were operating under the 2005 MSA, which could be invoked by verbal call-outs.[61] Absent evidence that raises a triable issue of fact on waiver, estoppel, or mutual mistake, Plaintiffs' argument is without merit.[62]

## D. **Express Negligence Doctrine**

To be enforceable, an indemnity agreement must meet the requirements of the express negligence doctrine. Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 509 (Tex. 1993). The doctrine states that a party seeking to indemnify another party from the consequences of its own negligence must specifically state the intent of the parties in the four corners of the contract. Storage & Processors, Inc. v. Reyes, 134 S.W.3d 190, 192 (Tex. 2004). Where negligence is not specifically mentioned within the indemnity agreement, it fails the express negligence doctrine. Ard

---

[61] The court also notes that Plaintiffs originally requested defense and indemnification pursuant to the 2005 MSA, not the 2013 MSC. See Doc. 113-2, Exs. 1-8 to Ex. B to Total Safety's Mot. for Summ. J., Pls.' Requests for Indemnification and Total Safety's Resps. Plaintiffs did not assert that the 2013 MSC applied until after being advised that the 2005 MSA failed the express negligence doctrine. See id.

[62] In fact, the summary judgment evidence establishes that the parties did not consider the 2013 MSC applicable to the work aboard the High Island 537. Terrell Folse ("Folse"), an employee of the Freeport-McMoRan entities, testified that: (1) there was not a single piece of evidence of a communication made to Total Safety that the 2013 MSC was to apply to the work aboard the High Island 537; (2) the 2013 MSC was not discovered until August or September of 2016 during reviews of a different lawsuit; and (3) the 2013 MSC was not in the project files for the work aboard the High Island 537. See Doc. 110-7, Ex. 6 to Gulf Crane & Lexington's Mot. for Partial Summ. J., Folse Dep. pp. 107-108, 111-113. Total Safety's corporate representative, Steven Landry, testified that it was obvious to anyone looking at the master services contracts that the 2005 MSA, and not the 2013 MSC, applied because Total Safety was working for MOGL not PXP. See Doc. 110-17, Ex. 16 to Gulf Crane & Lexington's Mot. for Partial Summ. J., Landry Dep. pp. 41-42. There was no evidence to raise a fact issue of a mutual mistake between the parties as to which master services contract applied.

v. Gemini Expl. Co., 894 S.W.2d 11, 14 (Tex. App.—Houston [14th Dist.] 1994, pet. denied). An indemnity agreement will comply with the express negligence doctrine where the agreement clearly states that (1) Party One is to indemnify Party Two (2) for Party Two's own negligence (3) regardless of whether Party Two is solely or concurrently negligent. See id.

The 2005 MSA's indemnity provision does not expressly provide for the indemnification of Plaintiffs for their own negligence.[63] Thus, the 2005 MSA fails the express negligence doctrine and Total Safety cannot be required to indemnify or defend the Plaintiffs for their negligence alleged in the Maillet Lawsuit.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Total Safety's motion for summary judgment be **GRANTED** and Plaintiffs' motions for summary judgment be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

---

[63] See Doc. 113-1, Ex. A to Total Safety's Mot. for Summ. J., The 2005 MSA p. 5.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 22nd day of August, 2019.

Nancy K. Johnson
United States Magistrate Judge